UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

RONALD BROWN, No. 69-B-0086,

          Petitioner,

       -v-                    07-CV-6119(MAT)
                                         **ORDER**
HAROLD D. GRAHAM,

          Respondent.

## I.  Introduction

*Pro se* petitioner Ronald Brown ("petitioner") has filed a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 challenging his conviction of Murder in the Second Degree (N.Y. Penal L. § 125.25(2)), Criminal Possession of a Weapon in the Second Degree (former N.Y. Penal L. § 265.03(2)), and Criminal Possession of a Weapon in the Third Degree (former N.Y. Penal L. § 265.02(4)) in Monroe County Supreme Court, entered on January 2, 1996.  For the reasons that follow, the petitioner is not entitled to habeas relief and the petition is dismissed.

## II.  Factual Background and Procedural History

In the early morning hours of January 26, 1995, Calvin Maxwell ("the victim") was shot and killed at the home of his close friend, Ronald Brown ("petitioner") during an altercation at 36 Judson Street in the City of Rochester.  Petitioner's three children were inside the home at the time of the shooting.  After hearing shouts, "tables falling," "stumbling," and a door slamming, Ebony Brown,

petitioner's daughter, called her uncle to pick her up and her siblings. T. 470-75.[1] Petitioners's next-door neighbors also heard the disturbance, and called 911. T. 344-46, 384. In the meantime, petitioner's brother ("Reggie") arrived at the house in his minivan. Upon entering the house, Reggie was told by petitioner that "they came in here," and that the victim was hurt and needed an ambulance. Reggie first checked on the children, and then observed the victim, injured, lying on the floor. T. 579-604. At some point, another friend of the family entered petitioner's residence and assisted Reggie in carrying the victim to Reggie's van. That individual then left the house. T. 605-07. Petitioner then left the house with his children, and they all got inside Reggie's vehicle. When petitioner exited the house, his neighbor observed petitioner with a gun in his hand. T. 390-91.

Responding to a radio dispatch that shots were fired near 36 Judson Street and that someone was seen placing what was possibly a body into a van, Rochester police officers arrived at the house in their patrol car and proceeded to follow the minivan. T. 683-85. With backup present, Police Officers Kevin Durawa and Nicholas Joseph activated the emergency lights of their police car to stop the vehicle. T. 686-87. Petitioner was in the front passenger seat; his brother, Reggie was in the driver's seat. Officer Durawa saw the victim lying on the middle bench seat of the van, alive,

---

[1] Citations to "T.___" refer to the trial transcript.

but injured from a gunshot wound. The officers then began to remove the occupants from the van at gunpoint. T. 689-90.

Petitioner was seated in a patrol car when a third officer asked petitioner what happened. T. 768. Petitioner responded that two men had broken into his home shot the victim after a struggle, and that the gun was somewhere in the house. T. 768. Petitioner led police back to 36 Judson to locate the weapon, but, after a search outside and on the first floor, the gun was not recovered.[2] Petitioner would not sign a consent form for the police to conduct a full search of the house. At that time, the house was not searched, but it was secured. T. 769-776. Petitioner was then taken to the Public Safety Building for questioning. T. 737. After being read his <u>Miranda</u> rights and waiving them, he told detectives that he and the victim were in the house when they heard a knock on the door. The victim answered the door and two black males wearing "black hoodies" and armed with a gun entered the home. A struggle ensued, during which one of the men shot the victim before petitioner managed to disarm him. T. 856. After questioning by detectives, petitioner acknowledged that the gun in fact belonged to him, but maintained that he did not shoot the victim. Thereafter, petitioner made no further statements to police. T. 856-57.

Petitioner was charged with two counts of Murder in the Second

---

[2] The gun was eventually found in a brown bag located between the driver's and front passenger's seats of Reggie Brown's minivan. T. 720, 722.

Degree (under alternative theories), Criminal Possession of a Weapon in the Second Degree, and Criminal Possession of a Weapon in the Third Degree in Monroe County Supreme Court. A probable cause/suppression hearing was held on July 24, 1995. By written decision dated August 11, 1995, the state court found that there was probable cause to arrest petitioner, and that his statements to police would not be suppressed at trial. A jury trial was held in November of 1995 before Justice Francis Affronti. Petitioner's defense was that two men came into his house at 36 Judson and shot the victim, although counsel did acknowledge that the gun belonged to petitioner. Ebony Brown testified for the defense; petitioner did not testify at trial.

Petitioner was found guilty of depraved indifference murder and criminal weapon possession, and was subsequently sentenced as a second violent felony offender to an aggregate term of imprisonment of twenty-eight and a half years to life. Sentencing Mins. 8-14.

Through counsel, petitioner filed a brief to the Appellate Division, raising nine points for review. See Respondent's Appendix ("Appx.") C. The Fourth Department unanimously affirmed the judgment of conviction. People v. Brown, 23 A.D.3d 1090 (4th Dept. 2005); lv. denied, 6 N.Y.3d 810 (2006).

Petitioner then filed a timely petition for habeas corpus, arguing that: (1) New York's depraved indifference murder statute

is unconstitutionally vague; (2) the trial court admitted unwarned statements in violation of his Fifth Amendment right against self-incrimination; (3) the verdict was against the weight of the evidence; (4) the sentence is excessive. Petition ("Pet.") ¶ 12(A)-(D) (Dkt. #5). For the reasons that follow, I find that the petitioner is not entitled to habeas relief, and the petition is dismissed.

## III. Discussion

### A.  General Principles Applicable to Federal Habeas Review

#### 1.  Standard of Review

Under the Anti-Terrorism and Effective Death Penalty Act ("AEDPA"), a federal court may grant habeas relief to a state prisoner only if a claim that was "adjudicated on the merits" in state court "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," 28 U.S.C. § 2254(d)(1), or if it "was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding." § 2254(d)(2).  A state court decision is "contrary to" clearly established federal law "if the state court arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law or if the state court decides a case differently than [the Supreme Court] has on a set of materially indistinguishable facts." Williams v. Taylor, 529 U.S.

362, 413 (2000).  The phrase, "clearly established Federal law, as determined by the Supreme Court of the United States," limits the law governing a habeas petitioner's claims to the holdings (not *dicta*) of the Supreme Court existing at the time of the relevant state-court decision.  Williams, 529 U.S. at 412;  accord Sevencan v. Herbert, 342 F.3d 69, 73-74 (2d Cir. 2002), cert. denied, 540 U.S. 1197 (2004).

A state court decision is based on an "unreasonable application" of Supreme Court precedent if it correctly identified the governing legal rule, but applied it in an unreasonable manner to the facts of a particular case.  Williams, 529 U.S. at 413;  see also id. at 408-10.  "[A] federal habeas court is not empowered to grant the writ just because, in its independent judgment, it would have decided the federal law question differently."  Aparicio v. Artuz, 269 F.3d 78, 94 (2d Cir. 2001).  Rather, "[t]he state court's application must reflect some additional increment of incorrectness such that it may be said to be unreasonable."  Id.  This increment "need not be great; otherwise, habeas relief would be limited to state court decisions so far off the mark as to suggest judicial incompetence."  Francis S. v. Stone, 221 F.3d 100, 111 (2d Cir. 2000) (internal quotation marks omitted).

Under AEDPA, "a determination of a factual issue made by a State court shall be presumed to be correct.  The [petitioner] shall have the burden of rebutting the presumption of correctness

by clear and convincing evidence." 28 U.S.C. § 2254(e)(1); <u>see</u> <u>also</u> <u>Parsad v. Greiner</u>, 337 F.3d 175, 181 (2d Cir. 2003) ("The presumption of correctness is particularly important when reviewing the trial court's assessment of witness credibility."), <u>cert.</u> <u>denied sub nom.</u> <u>Parsad v. Fischer</u>, 540 U.S. 1091 (2003). A state court's findings "will not be overturned on factual grounds unless objectively unreasonable in light the evidence presented in the state-court proceeding." <u>Miller-El v. Cockrell</u>, 537 U.S. 322, 340 (2003).

**B. Merits of the Petition**

**1. Void-for-Vagueness**

Petitioner contends, as he did on direct appeal, that the definitions of murder by depraved indifference and reckless manslaughter are vague and void, thereby depriving petitioner due process of law. <u>See</u> Pet. ¶ 12(A); Traverse ("Trav.") 8-10 (Dkt. #13), Appx. C at 60. The Appellate Division rejected this claim on the merits. <u>Brown</u>, 23 A.D.3d at 1092.

The constitutional "void-for-vagueness doctrine requires that a penal statute define the criminal offense with sufficient definiteness that ordinary people can understand what conduct is prohibited and in a manner that does not encourage arbitrary and discriminatory enforcement." <u>Kolender v. Lawson</u>, 461 U.S. 352, 357 (1983) (citations omitted). As a matter of fundamental due process "'[n]o one may be required at peril of life, liberty or property to

speculate as to the meaning of penal statutes.'" <u>United States v.</u> <u>Batchelder</u>, 442 U.S. 114, 123 (1979) (quoting <u>Lanzetta v. New</u> <u>Jersey</u>, 306 U.S. 451, 453 (1939) (alteration in original).

In his traverse, petitioner cites to <u>St. Helen v. Senkowski</u>, a district court case wherein the petitioner argued that New York's depraved indifference murder and reckless manslaughter statutes[3] have been "so blurred and conflated by recent interpretive decisions of the New York Court of Appeals with the result that there is no principled basis in which to distinguish the two crimes," and "[t]his violates the Constitutional rights of persons convicted under the more serious of the two offenses." <u>St. Helen v.</u> <u>Senkowski</u>, No. 02 Civ. 10248(CLB), 2003 WL 25719647, *4 (S.D.N.Y. Sept. 19, 2003), <u>rev'd on other grounds</u>, 374 F.3d 181 (2d Cir. 2004). <u>See</u> Trav. at 9. It appears then, that petitioner's main argument "is not that the depraved indifference statute standing by itself is unconstitutionally vague. Rather, it is that the difference between it and the manslaughter statute is either indiscernible or non-existent and that the congruence between the

---

[3] Under the definition of second degree murder for which petitioner was convicted, a person is guilty when "[u]nder circumstances evincing a depraved indifference to human life, he recklessly engages in conduct which creates a grave risk of death to another person, and thereby causes the death of another person." N.Y. Penal L. § 125.25(2). A defendant is guilty of manslaughter in the second degree when he "recklessly causes the death of another person." N.Y. Penal L. § 125.15(1). For purposes of imposing criminal liability in New York, a person acts "recklessly" with regard to a particular result or to a circumstance "when he is aware of and consciously disregards a substantial and unjustifiable risk that such result will occur or that such circumstance exists." N.Y. Penal L. § 15.05(3). "The risk must be of such nature and degree that disregard thereof constitutes a gross deviation from the standard of conduct that a reasonable person would observe in the situation." <u>Id.</u>

two statutes renders his conviction constitutionally infirm." Mannix v. Phillips, 390 F. Supp. 2d 280, 292 (S.D.N.Y. 2005). Nonetheless, "even assuming arguendo that there is no distinction at all between the conduct covered by the depraved indifference murder statute and the conduct covered by the manslaughter statute, there is no clearly established federal constitutional principle permitting this Court to grant habeas relief." Mannix, 390 F.Supp.2d at 292 (citing United States v. Batchelder, 442 U.S. 114, 116-17, 123-24 (1979)).[4]

In rejecting an identical claim to the one raised in the instant petition, the district court in Mannix relied on the explicit language in Batchelder that "there is no constitutional infirmity in giving the prosecution discretion to choose which of the two statutes it wishes to use as a basis for a charge against a defendant-'so long as it does not discriminate against any class of defendants.'" Mannix, 390 F.Supp.2d at 293 (S.D.N.Y. 2005) (quoting Batchelder 442 U.S. at 123-24; citing Pike v. Santucci, 1987 WL 6397, at *2-*3 (E.D.N.Y. Jan. 29, 1987) (no constitutional infirmity even if two statutes with different punishments could be

---

[4] As the district court noted in Mannix, two district court cases have granted writs of habeas corpus under 28 U.S.C. § 2254 on vagueness grounds with respect to convictions for depraved indifference murder: St. Helen v. Senkowski, No. 02 Civ. 10248(CLB), 2003 WL 25719647 (S.D.N.Y. Sept. 22, 2003), and Jones v. Keane, No. 7:02-CV-01804-CLB, 2002 WL 33985141 (S.D.N.Y. May 22, 2002). Both decisions were reversed because the vagueness challenges had not been exhausted and were procedurally defaulted, and thus the Second Circuit did not consider the vagueness claims on the merits. Mannix, 390 F.Supp.2d at 289 n.1 (citing St. Helen v. Senkowski, 374 F.3d 181 (2d Cir.2004) (per curiam), cert. denied, 543 U.S. 1058 (2005); Jones v. Keane, 329 F.3d 290, 295-96 (2d Cir.), cert. denied, 540 U.S. 1046 (2003)).

construed as reaching identical conduct); <u>United States v. Edmonson</u>, 792 F.2d 1492, 1497 (9th Cir. 1986) ("When, as here, conduct violates more than one criminal statute the government may generally elect which statute it wishes to charge.")).

Petitioner has not alleged that the prosecution's decision to prosecute him for depraved indifference murder rather than reckless manslaughter stemmed from some impermissible consideration such as his race or religion, or some other arbitrary classification. <u>Mannix</u>, 390 F.Supp.2d at 293 (citing <u>Batchelder</u>, 442 U.S. at 123-24)). Thus, petitioner has not demonstrated a constitutional infirmity in his prosecution. <u>See id.</u> (holding that the state court did not unreasonably apply <u>Batchelder</u> or any other Supreme Court precedent in rejecting his vagueness challenge even though the two purportedly identical statutes were presented to the trial jury).

Moreover, the "overwhelming weight" of New York state court authority, and this Circuit's district court authority, holds that "New York's depraved indifference murder statute is not unconstitutionally vague and does not allow unlimited or arbitrary discretion in its application." <u>Rustici v. Phillips</u>, 497 F.Supp.2d 452, 481-82 (S.D.N.Y. 2007) (citing, *inter alia*, <u>Farr v. Greiner</u>, No. 01 CR 6921(NG)(MDG), 2007 WL 1094160, at *21-24 (E.D.N.Y. Apr. 10, 2007); <u>Guzman v. Greene</u>, 425 F.Supp.2d 298, 313 (E.D.N.Y. 2006); <u>Mannix</u>, 390 F.Supp.2d at 292; <u>People v. Johnson</u>, 87 N.Y.2d 357, 361 (1996); <u>People v. Cole</u>, 85 N.Y.2d 990, 992 (1995)).

Accordingly, petitioner has not shown that the Appellate Division rendered a decision that was contrary to <u>Batchelder</u> or any other clearly established federal law. Petitioner's void-for-vagueness claim is therefore dismissed.

## 2. <u>Miranda</u> Violation

Petitioner next argues that the trial court erred in refusing to suppress petitioner's statements that he made to police prior to receiving his <u>Miranda</u>[5] warnings. Pet. ¶ 12(B). The Fourth Department rejected this contention on the merits, holding:

> The police apprehended defendant in the passenger seat of a van and the victim, who at that time was alive, was in the back seat of the van. When the police asked defendant what had occurred, defendant responded that intruders shot the victim and that the gun was at his house. Defendant thereafter spontaneously made other statements to the police, and defendant then became a suspect. No further questioning of defendant took place until he received his <u>Miranda</u> warnings. It is well established that statements such as those made by defendant in the van, in response to questions that are "investigatory in nature, not accusatory," are not the product of interrogation and thus the court properly refused to suppress those statements. Similarly, the spontaneous statements thereafter made by defendant also are not subject to suppression.

<u>Brown</u>, 23 A.D.3d at 1092 (citations omitted).

Following a probable cause/<u>Huntley</u>[6] hearing, the state court

---

[5] <u>Miranda v. Arizona</u>, 384 U.S. 436 (1966).

[6] <u>People v. Huntley</u>, 15 N.Y.2d 72 (1965) (trial court must conduct hearing to determine voluntariness of defendant's statements to be used as evidence at trial).

made the following findings of fact: police apprehended petitioner in the passenger seat of a van along with the victim, who was still alive at the time and in the back seat. When police asked petitioner, "what happened," petitioner responded that intruders shot the victim and that the gun was at petitioner's house. Petitioner thereafter led police to his residence, where he apparently began searching for the weapon. During this time, petitioner "continued to discuss the facts surrounding the incident, but his story constantly changed," after which petitioner became a suspect in the shooting. No further questioning took place, however, until he received his <u>Miranda</u> warnings several hours later at the public safety building. <u>See</u> Decision and Order, Ind. No. 95/73, dated 8/11/1995 at 5-8; Appx. D at 219-222. The state court's factual findings are presumed to be correct. 28 U.S.C. § 2254(e)(1).

In <u>Miranda v. Arizona</u>, 384 U.S. 436 (1966), the Supreme Court held that "the prosecution may not use statements ... stemming from custodial interrogation of the defendant unless it demonstrates the use of procedural safeguards effective to secure the privilege against self-incrimination." <u>Id.</u> at 444. In the context of custodial interrogation, "unwarned statements that are otherwise voluntary within the meaning of the Fifth Amendment must nevertheless be excluded from evidence." <u>Oregon v. Elstad</u>, 470 U.S. 298, 307 (1985). "Interrogation" while in custody has been defined

by the Supreme Court as express questioning initiated by law enforcement officers or its "functional equivalent." Rhode Island v. Innis, 446 U.S. 291, 300-01; see also Oregon v. Mathiason, 429 U.S. 492, 494 (1977) ("'By custodial interrogation, we mean questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way.'") (quoting Miranda, 384 U.S. at 444). However, the Supreme Court has emphasized that not all statements obtained by the police after a person has been taken into custody are to be considered the product of interrogation, Innis, 446 U.S. at 299; rather, "[v]olunteered statements of any kind are not barred by the Fifth Amendment and their admissibility is not affected by [its] holding...." Miranda, 384 U.S. at 478; accord Innis, 446 U.S. at 300. "'Interrogation,' as conceptualized in the Miranda opinion, must reflect a measure of compulsion above and beyond that inherent in custody itself." Innis, 446 U.S. at 300.

Here, petitioner contends he was subject to custodial interrogation from the time police ordered him out of his van at gunpoint until he gave his statement at the Rochester Public Safety Building. See Appx C at 79; Trav. at 8. Since the warnings are required only in the situation of a custodial interrogation, courts have also addressed the issues of when a person in custody has been "interrogated" for the purposes of Miranda. It is indeed arguable

whether petitioner would be considered "in custody" during the roughly seven hours preceding the <u>Miranda</u> warnings administered at the Public Safety Building.[7] <u>See</u> Appx. D at 226. Thus, the Fifth Amendment analysis here turns on whether his earlier, unwarned statements were volunteered or the product of interrogation. The Supreme Court set forth the standard for determining whether a statement is the product of interrogation in <u>Rhode Island v. Innis</u>:

> We conclude that the <u>Miranda</u> safeguards come into play whenever a person in custody is subjected to either express questioning or its functional equivalent. That is to say, the term "interrogation" under <u>Miranda</u> refers not only to express questioning, but also to any words or actions on the part of the police (other than those normally attendant to arrest and custody) that the police should know are reasonably likely to elicit an incriminating response from the suspect.

<u>Innis</u>, 445 U.S. at 300-01 (footnote omitted).

Based on a review of the record, it is clear that petitioner made a series of spontaneous remarks while police officers began conducting their preliminary investigation. He did not become a suspect until after he led police to his house and provided conflicting accounts of what transpired that evening. In asking petitioner "what happened" upon pulling over petitioner's vehicle, I do not find that the police acted in a manner that should reasonably have been anticipated to evoke an incriminating response from petitioner. The statements were not a product of

---

[7] The suppression court did not explicitly find that petitioner was not in custody during that time frame.

interrogation or its "functional equivalent." Innis, 446 U.S. at 299-301. Moreover, any remarks made once petitioner arrived at the house with police were spontaneous, and admissible even in the absence of Miranda warnings. See id. at 300-302; accord, e.g., Moye v. Corcoran, 668 F.Supp.2d 523, 535 (W.D.N.Y. 2009) ("The record does not support [petitioner's] argument that his oral statements were the product of either direct or subtle police interrogation or maneuvering. Rather, it appears that his oral statements were self-generating and spontaneous, and that he apparently kept talking after the police officers told him to direct any questions he had to the detective in charge of the investigation.").

As a result, I find that the Appellate Division did not unreasonably apply Federal law in rejecting petitioner's Miranda challenge, and this claim is dismissed.

### 3.  Weight and Sufficiency of the Evidence

Petitioner asserts that the verdict was against the weight of the evidence, and that the prosecution failed to prove every element of second-degree murder beyond a reasonable doubt. Pet. ¶ 12(C).

Challenges to the weight of the evidence supporting a conviction, unlike challenges to the sufficiency of the evidence, are not cognizable on federal habeas review. Maldonado v. Scully, 86 F.3d 32, 35 (2d Cir. 1996). A claim that a verdict was against the weight of the evidence derives from C.P.L. § 470.15(5), which

permits an appellate court in New York to reserve or modify a conviction where it determines "that a verdict of conviction resulting in a judgment was, in whole or in part, against the weight of the evidence." C.P.L. § 470.15(5). Thus, the "weight of the evidence" argument is a pure state law claim grounded in the criminal procedure statute, whereas a legal sufficiency claim is based on federal due process principles. <u>People v. Bleakley</u>, 69 N.Y.2d 490, 495 (1987). Since a weight of the evidence claim is purely a matter of state law, it is not cognizable on habeas review. <u>See</u> U.S.C. § 2254(a); <u>Estelle v. McGuire</u>, 502 U.S. 62, 68 (1991) ("In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States.").

Petitioner further argues that the evidence adduced at trial was insufficient to support a conviction of depraved indifference murder. Pet. ¶ 12(C). The Appellate Division disagreed, holding "there is legally sufficient evidence of 'extremely dangerous and fatal conduct performed without specific homicidal intent but with a depraved kind of wantonness.'" <u>Brown</u>, 23 A.D.3d at 1091 (quoting <u>People v. Payne</u>, 3 N.Y.3d 266 (2004).

"[T]he Due Process Clause of the Fourteenth Amendment protects a defendant in a criminal case against conviction 'except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged.'" <u>Jackson v.</u>

_Virginia_, 443 U.S. 307, 315 (1979) (quoting _In re Winship_, 397 U.S. 358, 364 (1970)). Thus, under federal law or New York state law, review of the legal sufficiency of trial evidence is governed by the same standard; the reviewing court is not required to decide whether it believes that the evidence at trial established guilt beyond a reasonable doubt, but whether any trier of fact could have found guilt beyond a reasonable doubt based on the evidence presented. _See Jackson_, 443 U.S. at 319; _see also_ _People v. Bleakley_, 69 N.Y.2d at 495. On habeas review, the _Jackson v. Virginia_ "standard must be applied with explicit reference to the substantive elements of the criminal offense as defined by state law." _Jackson_, 443 U.S. at 324 n.16; _accord, e.g._, _Green v. Abrams_, 984 F.2d 41, 44-45 (2d Cir. 1993) ("In considering a petition for a writ of habeas corpus based on insufficient evidence to support a criminal conviction in the state courts, a federal court must look to state law to determine the elements of the crime.").

The Court shall examine petitioner's claim in light of the controlling New York Court of Appeals cases at the time his conviction became final in May, 2006.[8] _See_ _Flowers v Fisher_, 296 Fed.Appx. 208, 210 (2d Cir. 2008) (summary order) ("We look to New York law as it existed at the time [petitioner's] conviction became final, as the New York Court of Appeals has found that although the

---

[8] A petitioner's conviction becomes final 90 days after the New York Court of Appeals denies leave to appeal. _See_ _Fernandez v. Artuz_, 402 F.3d 111, 112 (2d Cir. 2005).

law on depraved indifference has changed significantly in recent years, those changes do not apply retroactively.") (citing <u>Policano v. Herbert</u>, 7 N.Y.3d 588, 603 (2006)); <u>see also Henry v. Ricks</u>, 578 F.3d 134, 141 (2d Cir. 2009) (Due Process Clause does not require retroactive application of new case law in New York regarding interpretation of depraved indifference statute).

### a.  New York Penal Law § 125.25(2)

The New York depraved indifference murder statute provides that a person is guilty when, "[u]nder the circumstances evincing a depraved indifference to human life, he recklessly engages in conduct which creates a grave risk of death to another person, and thereby causes the death of another person." N.Y. Penal L. § 125.25(2).

### b.  Evolution of New York Case Law Applying § 125.25(2)

Until 2003, the controlling New York Court of Appeals case regarding the interpretation of the depraved indifference murder statute was <u>People v. Register</u>, 60 N.Y.2d 270, 277 (1983), which held that "recklessness is the element of mental culpability required" in N.Y. Penal L. § 125.25(2) and thus "the focus of the offense is not upon the subjective intent of the defendant, as it is with intentional murder, but rather upon an objective assessment of the degree of risk presented by defendant's reckless conduct."

<u>People v. Sanchez</u>, 98 N.Y.2d 373, 381-82 (2002), reaffirmed <u>Register</u>, holding that "[a] defendant's disregard of the risk

elevates and magnifies the degree of recklessness, itself establishing the required circumstances evincing depraved indifference to human life." After <u>Sanchez</u>, New York Court of Appeals began incrementally restricting the circumstances under which a defendant could be found guilty of depraved indifference murder beginning with its decision in <u>People v. Hafeez</u>, 100 N.Y.2d 253 (2003) (holding that defendant did not commit depraved indifference murder where evidence showed that defendant and codefendant planned an intentional attack in which they would first isolate and then intentionally injure the victim); <u>see also</u> <u>People v. Gonzalez</u>, 1 N.Y.3d 464, 467 (2004) ("The only reasonable view of the evidence here was that defendant intentionally killed the victim by aiming a gun directly at him and shooting him 10 times at close range, even after he had fallen to the ground."); <u>People v. Payne</u>, 3 N.Y.3d 266 (2004); <u>People v. Suarez</u>, 6 N.Y.3d 202, 211-12 (2005).[9]

In <u>Payne</u>, the state's highest court held that the "use of a weapon can never result in depraved indifference murder when . . . there is a manifest intent to kill." <u>People v. Payne</u>, 3 N.Y.3d at 271. Similarly, in <u>Suarez</u>, the Court of Appeals overturned a conviction where the defendant stabbed his girlfriend three times and fled without summoning assistance, holding that "a killing

---

[9] A detailed discussion of the progression of New York's depraved indifference murder statute is set forth in <u>Rustici v. Philips</u>, 497 F.Supp.2d 452, 483 (E.D.N.Y. 2007) and <u>Guzman v. Greene</u>, 425 F.Supp.2d 298, 313 (E.D.N.Y. 2006).

(whether intentional or unintentional) is not transformed into depraved indifference murder simply because the killer does not summon aid for the victim." 6 N.Y.3d at 210. Suarez distinguished the depraved indifference murder statute from reckless manslaughter in that "depraved indifference is best understood as an utter disregard for the value of human life-a willingness to act not because one intends harm, but because one simply doesn't care whether grievous harm results or not," as opposed to mere recklessness coupled with exposure to grave or substantial risk of death. Suarez, 6 N.Y.3d at 210; see also N.Y. Penal L. § 125.15(1). The Suarez court concluded, "[w]e depart slightly from the Register formulation, however, in that we make clear that the additional requirement of depraved indifference has meaning independent of the gravity of the risk." Id. at 215.

Ultimately, the Court of Appeals overruled Sanchez and Register in People v. Feingold, 7 N.Y.3d 288 (2006), and held that "depraved indifference is a culpable mental state." Feingold, 7 N.Y.3d at 294. Feingold's holding has resulted in a stricter application of the depraved indifference murder statute in New York. Rustici, 497 F.Supp.2d at 485 (citations omitted). Petitioner's conviction became final two months before Feingold was decided. Feingold, therefore, is not controlling for purposes of this petition.

### c. Application of Relevant Law to Petitioner's Case

The instant case is distinguishable from the post-<u>Sanchez</u> depraved indifference cases, which were overturned because each evinced "a mental state of intent, and no other." <u>Farino v. Ercole</u>, No. 07CV3592(ADS), 2009 WL 3232693 at *15 (E.D.N.Y. Sept. 30, 2009). Briefly, the proof presented at trial established the following: Petitioner and the victims were close friends. On the night of the shooting, they had an altercation with one another. Petitioner displayed the gun and threatened the victim with it. The prosecution's medical examiner testified that the victim died from his gunshot wound that entered the victim's left elbow and passed horizontally through his chest, causing damage to "major organ systems and resultant massive hemorrhage." T. 990, 994-95. At the scene, police discovered an upside down table with a bullet-hole in it. T. 889.

The evidence showed that, although petitioner may not have intended his victim's death by shooting him in the arm, the act of firing multiple shots from a pistol during a scuffle demonstrated a depraved indifference to the life of his friend and the three children inside the home. <u>See</u> N.Y. Penal L. §§ 125.25(2), 15.05(3); <u>see, e.g.</u>, <u>Sanchez</u>, 98 N.Y.2d at 377 ("The jury may also have taken into account the preexisting good relations between defendant and [the victim], and concluded that this was an

instantaneous, impulsive shooting-perhaps to disable or frighten [the victim], rather than to kill him. Thus, a jury reasonably could have found that defendant's homicidal level of mental culpability was reckless rather than intentional.").

This case is not one in which there was "absolutely no evidence whatsoever that the defendant might have acted unintentionally." Policano, 7 N.Y.3d at 601. To reiterate, the proof at trial established an impulsive, erratic shooting in the course of a scuffle with several people present in the home at the time. A rational finder of fact could have found guilt beyond a reasonable doubt based on the evidence presented. See, e.g., Gaskin v. Graham, No. 08-CV-1124(JFB), 2009 WL 5214498 at *11 (E.D.N.Y. Dec. 30, 2009) ("it is conceivable that the jury could have found that although petitioner did not intend to kill [the victim], his actions-by taking out his gun during a heated altercation with his girlfriend's nephew, after the nephew was encouraging petitioner to fight him, with several bystanders nearby-manifested the requisite circumstances for the jury to find petitioner guilty of depraved indifference murder."). I therefore do not find that petitioner meets the "very high burden" of establishing an insufficiency claim on habeas review, United States v. Carson, 702 F.2d 351, 361 (2d Cir.) (citations omitted), cert. denied, 462 U.S. 1108 (1983), and therefore the Appellate Division's decision was not an unreasonable application of, or

contrary to firmly-established Supreme Court precedent.

### 4.    Harsh and Excessive Sentence

Petitioner avers that his sentence is excessive. Pet. ¶ 12(D). A challenge to the term of a sentence does not present a cognizable constitutional issue if the sentence falls within the statutory range. <u>White v. Keane</u>, 969 F.2d 1381, 1383 (2d Cir. 1992); <u>accord Ross v. Gavin</u>, 101 F.3d 687 (2d Cir. 1996) (unpublished opinion). Petitioner received twenty-five years to life for his murder conviction, a class A-1 felony. Such a sentence is within the limits of the statutory guidelines. <u>See</u> Penal L. § 70.00. Petitioner suggests that his sentence is unfair because there was insufficient evidence to convict him of second-degree murder. As discussed above in Part III.B.3, I do not find that to be the case. Accordingly, this claim is dismissed.

## IV.  Conclusion

For the reasons stated above, Ronald Brown's petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 is denied, and the action is dismissed. Because petitioner has failed to make a "substantial showing of a denial of a constitutional right," 28 U.S.C. § 2253(c)(2), the Court declines to issue a certificate of appealability. <u>See, e.g.</u>, <u>Lucidore v. New York State Div. of Parole</u>, 209 F.3d 107, 111-113 (2d Cir. 2000). The Court hereby certifies, pursuant to 28 U.S.C. § 1915(a)(3), that any appeal from this judgment would not be taken in good faith and therefore denies

leave to appeal as a poor person.  <u>Coppedge v. United States</u>, 369

U.S. 438 (1962).

**SO ORDERED.**

S/Michael A. Telesca

_____
MICHAEL A. TELESCA
United States District Judge

Dated:     April 6, 2010
           Rochester, New York